Jones, J.
The imperative regulation and management of the public markets is confided to the city inspector’ s department, and particularly to that bureau of said department which is called “The Bureau of Markets.” The chief officer of this bureau is the “Superintendent of Markets.”
The provisions of the ordinances respecting the occupation of stands and stalls in the public market, so far as it is now necessary to refer to them, are :
“He (the superintendent of markets) may, with the consent of the city inspector, grant permits in writing to such persons as may be proper, at a daily rate to be mentioned therein, to occupy stands in the public markets, and may at any time with like consent, annul such permits ”(§ 55).
“ It shall be the duty of the superintendent of markets to prepare a register or list of all permanent stalls or stands of the several markets, the names of those occupying, and the fee or rents per week or month paid for the same; and the superintendent, under the direction of the city inspector for that purpose, shall have power to arrange and re-number the stands or stalls in the several markets, and equalize the rents or fees ; and the occupants of such stands or stalls shall immediately, at their own expense, cause numbers to be placed thereon; a copy of such register or list shall, immediately after the same has been prepared, be filed *423 by said superintendent with the comptroller, and all returns of market rents or fees shall be made in accordance with such register list” (§ 62).
“No transfer or assignment of any stall or stand in any of the public markets shall be make without written permission of the. city inspector and the superintendent of markets, and such transfer duly entered on a list and notice thereof given to the comptroller, who shall consent to such transfer before any removal can be made of such transfer. In case of any person being removed or any permits being annulled, the party or parties in interest shall have the privilege of making an appeal to the common council on any decision made by the city inspector concerning such removal” (§ 64).
“They (the clerks of the markets) may suspend any person having a stall or stand in a public market, to which they are respectively attached or occupying a part thereof, or of the street and adjoining the same, from occupying or using any part of such market or street, whether he be a licensed butcher or not” (§ 70).
“Immediately upon such suspension, the clerk making the same shall report the facts thereof, with the reasons of the suspension, to the city inspector, who shall hear the same upon sufficient notice to the person suspended, and an opportunity offered him to be heard in his defense, and whose decision upon the matter shall be final, provided the mayor shall approve the same” (§71).
The scheme of these provisions is to place it within the discretion of the superintendent of markets to select in the first instance, those persons who shall be allowed to occupy stands, subject to having the exercise of his discretion approved by the city inspectors. After this discretion has been exercised with such approval, then it is left to the superintendent to determine *424 whether the permission to occupy shall continue or not; this determination is to be made according to his individual discretion, subject, however, if the determination is adverse to the occupant, to the approval of the city inspector, and if he approves, then to the approval of the common council, on appeal to them.
In the case of a transfer or assignment of a stand, it must be with the permission of the city inspector and the superintendent, and consent of the comptroller; the giving or withholding of the permission is entirely within the discretion of the city inspector and superintendent ; so also, probably, is the giving or withholding of tire consent, in the discretion of the comptroller.
In the case of a suspension directed by the clerk, it is true the party is entitled to be heard in his defense, but the decision of the city inspector is entirely in his discretion, and so, also, the approval of the mayor is in his discretion.
The discretion thus given to these various officers is unlimited and uncontrollable, except so far as the section above cited requires the consent or approval of some other officers, the granting or withholding of which consent or approval rests in the unlimited and uncontrollable discretion of the officer whose consent or approval is required, and except, also, so far as an appeal is given to the common council, upon the decision of which appeal, that body acts with unlimited discretion, and its decision is absolutely beyond all control.
It thus appears that the scheme is, to invest in the city inspector’s department, the sole power permitting persons to occupy stands, subject to certain restrictions, free from the control or authority of the courts.
As part of the scheme, the permits are given for no definite period, nothing is required to be paid for the permits, and no rent is fixed to be paid for any definite period of time. It is a mere license to occupy, as long *425 as the licensor see fit to allow the occupation to continue, on payment each day of a fixed sum for that day’s occupation. The system of approval and consents to revocations of the licenses, or a transfer or assignment, or a suspension of them, does not alter the character ; the corporation is the principal, and the other officers its agents, through whom it acts in granting the licenses, and the system of approvals- &c., is simply the retention and exercise of authority on the part of the principal.
A permit given under these provisions does not constitute property. It confers upon its holder no right or interest which is cognizable in the courts, or capable of being protected by them. The courts cannot compel a permit to be given, nor -prevent one from being annulled, nor can they in any manner review the action of the officers mentioned in the ordinance. They cannot compel the recognition of one who should purchase a permit under its decree, nor can they put such a purchaser in possession or protect him in his possession.
The utmost authority the courts can have, is this: if an officer undertakes to do an act which requires the approval or consent of some other officer, without such approval or consent, the court may possibly restrain him until he obtain such approval or consent.
Such being the nature of the permit in question, the court cannot, at least in the present stage of the action, take any action concerning it.
I say at least in the present stage, because it may possibly be, that the plaintiff may be entitled to have it determined by the final decree whether the permit was brought in and intended to constitute a part of the partnership effects or not, in order to base thereon, if the determination be in his favor, an application to the market authorities; and perhaps, also, in such event the court might possibly direct a sale of all the right, *426 title and interest (whatever it may be) of the parties in the permit, leaving it to the purchaser to obtain, if he can, recognition from the proper authorities. On this I express no opinion, leaving that to the judge who tries the cause; only here suggesting, that it would seem that such a right was not cognizable to any extent whatever in the courts, as constituting property.
It would, however, be improper now to determine whether the permit was so brought in or not, because whether it was or not depends entirely on whether it was specificaEy made a part of the terms of the partnership that each partner should have an equal share in the- permit.
That is one of the issues in this action, and should be left for determination on the trial.
Still, were it not for the peculiar nature of the permit, the court might, without determining the issue, appoint a receiver over the permit and the stand, for its preservation during the litigation.
As it is, however, the court cannot do this, for want of power, inasmuch as it can neither put its receiver into possession, nor control the action of those officers entrusted with the management of the markets.
As the court cannot take control of the stand, there is no objection to the defendant’s remaining in possession, as long as the market authorities will permit him.
Motion denied, with costs.